JOSÉ EMILIO PÉREZ GUZMÁN, peticionario, *v.* PEDRO ROSSELLÓ GONZÁLEZ, recurrido.

*Número:* CC-2004-554      *Resuelto:* 14 de julio de 2004

*Oronte Oliveras Sifre*, abogado de la parte peticionaria; *Luis Berríos Amadeo* y *Luis F. Estrella Martínez*, abogados de la parte recurrida.

## RESOLUCIÓN

### I

Durante el mes de febrero de 2003, el Dr. Pedro Rosselló González (Rosselló González) anunció públicamente su aspiración a la candidatura a la gobernación de Puerto Rico por el Partido Nuevo Progresista (P.N.P.). El 31 de julio de 2003, el Sr. José E. Pérez Guzmán presentó una querella ante la Comisión Estatal de Elecciones (C.E.E.) en la cual alegó que el Rosselló González no cumplía con el requisito de residencia que exige el Art. IV, Sec. 3, de nuestra Constitución, L.P.R.A., Tomo 1, a todo aquel que desee aspirar al cargo de Gobernador del Estado Libre Asociado de Puerto Rico. El 20 de agosto de 2003 la C.E.E. notificó al señor Pérez Guzmán que, tratándose de unas primarias donde se seleccionaría el candidato a Gobernador por el P.N.P, su querella se desestimó por falta de "legitimación activa", ya que él no era un elector activo de ese partido. La C.E.E. le informó al señor Pérez Guzmán que, a tenor de el Art. 1.016 de la Ley Electoral de Puerto Rico (Ley Electoral), Ley Núm. 4 de 20 de diciembre de 1977 (16 L.P.R.A. sec. 3016a), de no estar conforme con la mencionada resolución, tenía derecho a acudir en revisión judicial ante el Tribunal de Primera Instancia dentro de los diez días siguientes a la notificación. El 1ro de agosto de 2003 la C.E.E. certificó a Rosselló González como aspirante a primarias por el P.N.P. para el cargo de gobernador.

El señor Pérez Guzmán no acudió en revisión judicial. En su lugar, el 26 de marzo de 2004, *transcurridos aproximadamente siete meses desde la desestimación de la querella*, presentó, por derecho propio, una demanda ante el Tribunal de Primera Instancia donde solicitó, entre otras cosas y bajo argumentos similares a los esbozados ante la C.E.E., "[*que*] *se declare inconstitucional la candidatura a la gobernación del Dr. Pedro Rosselló y se le ordene a la*

*Comisión Estatal de Elecciones que le retire la certificación expedida para dicha candidatura".* (Énfasis suplido.)[1] Es decir, con su acción civil lo que verdaderamente solicitaba el señor Pérez Guzmán era que se pasara juicio sobre la certificación que emitió el Presidente de la C.E.E. que autorizaba la candidatura a la Gobernación de Rosselló González. Oportunamente, el Comisionado Electoral del P.N.P., Lcdo. Thomas Rivera Schatz, como miembro de la codemandada C.E.E., presentó, ante el foro de instancia, una solicitud de desestimación por falta de jurisdicción, a la que se unió el P.N.P. y Rosselló González. Celebrada la vista, y luego de evaluar los planteamientos de las partes, el 22 de abril de 2004 el Tribunal de Primera Instancia dictó una sentencia mediante la cual desestimó con perjuicio la demanda que presentó el señor Pérez Guzmán porque no cumplió con el término jurisdiccional para solicitar la revisión judicial de una determinación de la C.E.E., según lo provee el Art. 1.016 de la Ley Electoral, *supra.* Además, ese foro señaló que aun adoptando el argumento del señor Pérez Guzmán a los efectos de que nos encontramos ante una acción independiente de impugnación judicial ajena a la revisión judicial de la determinación de la C.E.E., el resultado sería el mismo porque al caso ante nos le aplica la doctrina de incuria. Oportunamente, el señor Pérez Guzmán presentó una solicitud de reconsideración, la cual se declaró "no ha lugar" el 28 de abril de 2004.

Insatisfecho, el señor Pérez Guzmán acudió, por derecho propio, ante el Tribunal de Apelaciones mediante un recurso de *certiorari.* Por considerar que la decisión recurrida era esencialmente correcta, ese foro denegó la expedición del auto solicitado conforme a la Regla 40 del Reglamento Transitorio para el Tribunal de Apelaciones de 18 de noviembre de 2003, págs. 50–51. El señor Pérez Guzmán presentó una moción de reconsideración ante ese foro, la cual fue declarada "no ha lugar" el 8 de junio de 2004,

---

[1] Véase Apéndice de la Petición de *certiorari*, pág. 8.

archivándose en autos copia de su notificación el 10 de junio de 2004.

Inconforme, el 21 de junio de 2004 el señor Pérez Guzmán acudió ante nos mediante un recurso de *certiorari*. En esencia, sostiene que erró el Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia sin celebrar vista evidenciaria para verificar si Rosselló González posee las cualificaciones necesarias para aspirar al cargo de Gobernador del Estado Libre Asociado de Puerto Rico. Oportunamente, el Comisionado Electoral del P.N.P., Lcdo. Thomas Rivera Schatz, como miembro de la codemandada C.E.E., presentó ante este Foro un memorando en oposición a la expedición del auto y una solicitud de desestimación por falta de jurisdicción.

Del anterior trasfondo procesal surge que la demanda que presentó el señor Pérez Guzmán ante el Tribunal de Primera Instancia intenta cuestionar a destiempo, es decir, siete meses después, la certificación que emitió la C.E.E que acredita a Rosselló González como candidato a la Gobernación del P.N.P. Conforme al Art. 1.016 de la Ley Electoral, *supra*, el peticionario contaba con tan sólo diez días para solicitar la referida revisión judicial, por lo que no podía utilizar como subterfugio una alegada "acción independiente" y esperar siete meses para cuestionar el dictamen de la C.E.E. Así las cosas, tanto el foro de instancia como el foro apelativo intermedio, actuaron correctamente al declararse sin jurisdicción para entender en el asunto. Por ende, este Tribunal tampoco tiene jurisdicción para atender el asunto en los méritos.

## II

Ahora bien, aun considerando que nos encontramos ante una acción independiente de impugnación judicial, ajena a la revisión judicial de la determinación de la

C.E.E., el resultado sería el mismo porque al caso le aplica la doctrina de incuria.

Se entiende por incuria (*laches*) la "dejadez o negligencia en el reclamo de un derecho, la cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *IM Winner, Inc. v. Mun. de Guayanilla*, 151 D.P.R. 30, 39 (2000). Véanse: *Colón Torres v. A.A.A.*, 143 D.P.R. 119, 124 (1997); *Pueblo v. Valentín*, 135 D.P.R. 245, 255–256 (1994); *Aponte v. Srio. de Hacienda, E.L.A.*, supra, pág. 618. ·

En *Pueblo v. Valentín*, supra, pág. 256, citando con aprobación lo dispuesto en *Torres Arzola v. Policía de P.R.*, 117 D.P.R. 204, 209 (1986), establecimos que

> ... no basta el transcurso de un tiempo determinado para que exista lo que se denomina técnicamente incuria o laches. *Es imprescindible que la conducta negligente del peticionario, al no promover con prontitud y diligencia la expedición del auto, haya causado una demora innecesaria e indebida que de hecho perjudica a las demás personas interesadas. Adviértase que la teoría de laches envuelve dos elementos: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias.* Además, hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia. Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de laches. *Sobre todo[,] es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales.* (Énfasis en el original suprimido y énfasis suplido.)

En el presente caso, el señor Pérez Guzmán incurrió en una dilación injustificada en la presentación de su reclamación ante el foro de instancia al esperar, sin apoyo en fundamento legal, al 26 de marzo de 2004 para solicitar la descalificación de Rosselló González como candidato a Gobernador por el P.N.P, no empece a conocer del regreso de éste a la política partidista desde agosto de 2003. Sin lugar a dudas, de acogerse los planteamientos del peticionario en estos momentos, se causaría un perjuicio indebido a la mencionada institución política y a los electores que ésta representa, al éstos tener que seleccionar un nuevo candidato a gobernador a tan sólo cuatro meses de las elecciones generales.

### III

Siendo ello así, considerada la Petición de *certiorari*, así como el Memorando en Oposición a la Expedición del Auto y Solicitud de Desestimación por Falta de Jurisdicción, presentado en el caso de epígrafe, *el Tribunal desestima el recurso por falta de jurisdicción.*

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rebollo López está conforme con el *resultado* al que se llega, aun cuando difiere de algunos de los fundamentos jurídicos expuestos en la referida resolución. El Juez Asociado Señor Fuster Berlingeri disintió con una opinión escrita.

(*Fdo.*) Patricia Otón Olivieri
*Secretaria del Tribunal Supremo*

— O —

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, el peticionario José E. Pérez Guzmán presentó una demanda ante el Tribunal de Primera Instancia mediante la cual alegó *inter alia* que el Dr. Pedro Rosselló, junto con su esposa, se fue de Puerto Rico en enero de 2001 para Estados Unidos a trabajar y vivir allá; que compró una residencia en el estado de Virginia para morar allí, por la cual pagó alrededor de un millón de dólares; que alquiló por plazo indefinido su residencia en Puerto Rico, y que declaró en sus planillas de ingreso de los años 2001, 2002 y 2003 que no era residente de Puerto Rico. Sobre la base de éstas y otras alegaciones, Pérez Guzmán adujo que el doctor Rosselló no cumplía con el requisito constitucional para poder ocupar el cargo de Gobernador de Puerto Rico, de haber sido residente *bona fide* de Puerto Rico durante los cinco años anteriores a la fecha de su elección.

Los foros *a quo* desestimaron la demanda aludida, por lo que Pérez Guzmán recurrió ante nos. Una mayoría de este Tribunal ha denegado su recurso por entender que Pérez Guzmán no impugnó la candidatura del doctor Rosselló expeditamente. Disiento de ese dictamen por las razones que expongo a continuación.

I

Según los hechos del caso de autos, Pérez Guzmán presentó su *acción judicial* aproximadamente *ocho meses* después que la Comisión Estatal de Elecciones certificara al doctor Rosselló *como aspirante a primarias* por el Partido Nuevo Progresista (P.N.P.) para el cargo de Gobernador,

certificación que se emitió el 1 de agosto de 2003. Estima la mayoría del Tribunal que Pérez Guzmán tardó demasiado para incoar tal acción. Yo difiero de ese juicio.

La fecha realmente decisiva para determinar si fue tardía o no la acción judicial del peticionario para impugnar la candidatura a Gobernador del doctor Rosselló es el *8 de diciembre de 2003*, cuando la Comisión Estatal de Elecciones finalmente certificó tal candidatura. Antes de esa fecha, se conocía que el doctor Rosselló intentaba aspirar al cargo referido, por lo que participó en unas primarias, pero aún no ostentaba esa candidatura oficialmente. Antes del 8 de diciembre de 2003, la impugnación hubiese sido jurídicamente *prematura*. No existía hasta entonces la certeza legal necesaria de que el doctor Rosselló sería *candidato a Gobernador* como para que su candidatura se pudiese impugnar judicialmente.

Por lo anterior, la pregunta crucial en lo que aquí nos concierne es si el pleito incoado por Pérez Guzmán el *26 de marzo de 2004* es irremediablemente tardío, a la luz de la doctrina de incuria. Es decir, *¿constituye una dilación injustificada que amerite desestimar su acción judicial el hecho de que Pérez Guzmán esperó tres meses y dos semanas para presentar su pleito contra el doctor Rosselló?*

En mi criterio, Pérez Guzmán pudo ser más diligente y debió serlo. Sin embargo, su acción judicial trata de un asunto *del mayor interés público* y la cuestión de si su pleito es tardío o no tiene que juzgarse necesariamente a la luz de la enorme importancia que reviste este asunto para el país. Se trata nada menos que de la *legitimidad* de una de las candidaturas principales para los próximos comicios de Puerto Rico. *Está en juego, por ende, la argüible nulidad de una elección, de resultar favorecido el doctor Rosselló.*

El requisito que debe cumplir cualquier candidato a Gobernador —de ser residente *bona fide* de Puerto Rico durante los cinco años precedentes a la fecha de su elección—

existe comúnmente en las Constituciones de los estados de la Unión americana. En efecto, cuarenta y tres estados de Estados Unidos tienen requisitos de residencia para el cargo de Gobernador del estado, *y veintinueve estados requieren una residencia de cinco años o más. Chimento v. Stark*, 353 F.Supp. 1211, 1217 (D. N.H. 1973). El requisito que establece nuestra propia Constitución, *tomado del que existía en la Carta Orgánica Jones*,([1]) fue objeto de extensas discusiones en la Convención Constituyente de Puerto Rico. *No hay duda del significado de este requisito.* Lo expresó con claridad el delegado Reyes Delgado en uno de los debates sobre el particular:

> Los cinco años se refieren a residencia. [E]l compañero Gutiérrez Franqui aclaró, con bastante certeza, ese aspecto de la palabra "residente" [en términos de que] son muchos los Estados donde, para ocupar cargos públicos, se exige más de un año, dos años, y tres años de residencia.
>
> . . . . . . . .
>
> Aquí no estamos pidiendo residencia distinta para un ciudadano que se ha hecho ciudadano americano aquí en Puerto Rico, o que ha venido de los Estados Unidos ya hecho ciudadano, o que se naturalizó ciudadano allá. No hay diferencia en cuanto a la ciudadanía. Lo mismo da que sea un ciudadano de un estado que de otro, nacionalizado o no. Es que debe tener cinco años de residencia. Por ejemplo, un puertorriqueño que ha nacido aquí, se va a los Estados Unidos, está veinticinco años, vuelve aquí, no es razonable, que sin conocer los problemas del país, se le vaya a designar para el cargo de Gobernador. Se le exige a ése cinco años de residencia también .... 1 (Núm. 45) Diario de Sesiones de la Convención Constituyente 653 (1952).

El historial del requisito constitucional en cuestión hace claro que la residencia exigida es de *habitar en Puerto Rico cinco años consecutivos.* Alude a radicar cinco años conse-

---

([1]) Véase A. Fernós-Isern, *Original Intent in the Constitution of Puerto Rico: Notes and Comments Submitted to the Congress of the United States*, 2d ed., Hato Rey, Lexis-Nexis of Puerto Rico, Inc., 2002, pág. 79.

cutivos en la isla antes de la fecha de la elección. *No los satisface quien se ha ido a morar un par de años a otro lugar fuera del país.*

A la luz de este claro historial del requisito aludido, de comprobarse judicialmente las alegaciones de Pérez Guzmán, podría resultar que el doctor Rosselló *NO CUMPLA* con el requisito constitucional de residencia. En derecho, es claro que una persona puede tener varios lugares de residencia. *Pero es igualmente claro que una persona puede dejar de ser residente de algún lugar si se muda de ese lugar y deja de tener los vínculos de vecindad necesarios para ello.* Más aún, el propio Tribunal Supremo de Estados Unidos ha validado que las jurisdicciones estatales fijen requisitos para candidatos a Gobernador de hasta *siete años de residencia. Chimento v. Stark,* supra. Las alegaciones de Pérez Guzmán en este caso, si se evidencian debidamente en una vista judicial, ciertamente establecerían una presunción de que el doctor Rosselló dejó de ser residente de Puerto Rico durante dos años, por lo que éste tendría que rebatir satisfactoriamente esa presunción con la prueba pertinente para poder permanecer válidamente como candidato a Gobernador. Debe tenerse en cuenta de que no se trata aquí de un requisito para ser *elector,* con respecto al cual la doctrina federal exige términos cortos —*Dunn v. Blumstein,* 405 U.S. 330 (1972)— sino de un requisito para ocupar el más alto puesto del Gobierno, de mayor duración, que la inmensa mayoría de los estados de la Unión americana tienen igualmente en sus propias Constituciones, y que el Tribunal Supremo federal considera válido.

La controversia de este caso es, pues, una cuestión que es menester dilucidar judicialmente. La contienda electoral que se avecina no debe quedar sujeta a la posibilidad de que su resultado esté manchado por la sombra de una deficiencia constitucional. Para proteger la integridad del

proceso electoral, este asunto se debe clarificar judicialmente. El requisito de residencia en cuestión no lo establece un reglamento electoral o un estatuto del país, sino la propia Constitución del Estado Libre Asociado de Puerto Rico. Este Foro no debe abdicar, en el caso de autos, su función más importante de velar por que se respete y obedezca nuestra ley más fundamental. La vagarosa doctrina de incuria, que es de origen y naturaleza judicial, no presenta obstáculos insalvables que impidan nuestra intervención aquí, sobre todo cuando se toma en cuenta que una de las raíces de esa misma doctrina procura precisamente la protección del interés público. *Torres Arzola v. Policía de P.R.*, 117 D.P.R. 204 (1986). *Todavía queda tiempo para actuar.*

Es por lo anterior que yo aplicaría aquí la doctrina de incuria con la flexibilidad que este importantísimo asunto requiere. De ese modo expediría el recurso solicitado, a los fines de ordenar que el tribunal de instancia celebre de inmediato una vista para recibir la prueba correspondiente y así, de manera pronta, escuchar con urgencia a todas las partes para verificar judicialmente si los hechos del caso se ajustan a lo alegado.

Como la mayoría del Tribunal resuelve de otro modo, yo disiento.